# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JERRY L. VINYARD,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.   10-CV-341-WDS** |
| | ) | |
| **UNITED STATES of AMERICA,** | ) | **CRIMINAL NO. 05-CR-40065-WDS-5** |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 1), to which the government filed a response (Doc. 3), and petitioner a reply (Doc. 4).   Also before the Court are a number of supplements, (Docs. 10, 12, 13, 14, 15, and 24), which this Court thoroughly reviewed and considered.[1]

## BACKGROUND

The facts of this case present an unusual scenario.   Petitioner's criminal case was initially before United States District Judge J. Phil Gilbert.   On November 7, 2006, petitioner pleaded guilty, in an open plea, before Judge Gilbert, to conspiring to manufacture, distribute, and possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846.   Based on this charge, petitioner faced a statutory term of imprisonment of ten (10) years to life.   Additionally, prior to petitioner's plea, the government filed an Information pursuant to 21 U.S.C. § 851 to establish petitioner's prior

---

[1] The court liberally construed petitioner's pro se pleadings.   *See Smith v. Grams*, 565 F.3d 1037, 1041-42 (7th Cir. 2009); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

felony drug conviction of Unlawful Delivery of a Controlled Substance, which increased the mandatory minimum term of imprisonment applicable to petitioner to twenty (20) years. At the time of his guilty plea, petitioner signed a written Stipulation of Facts, admitting, *inter alia*, that the amount of methamphetamine involved in the charged conspiracy was in excess of 500 grams. At his change of plea hearing, petitioner was advised by the Court that a § 851 Information regarding his prior drug conviction had been filed, and that a mandatory minimum sentence of twenty (20) years would apply to him at sentencing. (Plea Transcript at 5-6). Vinyard stated, at the change of plea hearing, that he understood this. *Id.*

The Seventh Circuit described the subsequent events as follows:

At sentencing on May 3, 2007, no one had any objections to the presentence report (PSR), which recommended a guideline range of 235-293 months' imprisonment, based on a finding that Vinyard was involved with 36.5 kilograms of methamphetamine and had possessed a firearm during the offense. Before imposing the sentence, the district court agreed to allow Vinyard's wife to address the court. She spoke for some time, emphasizing the effect that a long sentence would have on their 11-year-old daughter. After his wife spoke, Vinyard for the first time questioned some of the facts in the PSR having to do with amounts of anhydrous ammonia involved in the crime. The district court asked him if he was objecting to the PSR. Vinyard waffled, seeming to say yes, but noting that he was not acting on the advice of counsel, who was concerned about Vinyard's jeopardizing his three-level reduction for acceptance of responsibility and other benefits he was expecting. After a brief recess, Vinyard withdrew any objections, and the district court sentenced him to the mandatory minimum of 240 months.

At this point, the district court appears to have had second thoughts. The next day, May 4, without giving any notice to the Government, he ordered Vinyard's release. This caused problems because the order was not filed until May 7; the Government learned of Vinyard's release only when an agent happened to see him walking into the Probation Office. The Government immediately filed a notice of appeal of the release order on May 7 (No. 07-2058), and on May 10 it filed a motion to reverse and vacate the release order. That same day (May 10), this court entered an order requiring Vinyard to be detained. The district court responded hours later by *sua sponte* vacating Vinyard's plea and sentence, ordering new appointed counsel, vacating its release order, and ordering Vinyard to self-report the next day. This court issued another order reiterating the immediate detention order. The Government filed an appeal of the May 10 order

vacating the plea and sentence (No. 07-2304). The appeal of the release order was dismissed on the ground that it had become moot.

        Along with its appeal of the *vacatur*, the Government filed a motion to stay the proceedings with both the district court and the circuit on June 5. On June 13, one day before the next scheduled status hearing, the district court granted the motion to stay and amplified on its reasons for vacating the plea and sentence. On July 17, the Government filed a petition for a writ of mandamus to compel the district court to reinstate the sentence it had pronounced (No. 07-2674).

*United States v. Vinyard*, 539 F.3d 589, 590-591 (7th Cir. 2008).    On October 31, 2007, Judge Gilbert recused himself, and the case was reassigned to the undersigned judge for all further proceedings.    The Seventh Circuit granted the petition to issue a writ of *mandamus*, vacated the May 10 *vacatur* of the plea and sentence, and ordered that judgment be entered pursuant to the May 3, 2007 sentence.    *Id*. at 595.    It also expounded upon the issues which had concerned Judge Gilbert, as reflected in his orders, and which had caused him to take the unusual steps of *sua sponte* vacating the plea and sentence.

    Judge Gilbert apparently doubted the validity of the guilty plea, only to the extent that he believed that the petitioner had not been properly advised regarding the § 851 notice filed against him.    (*See* No. 4:05-cr-40065-WDS-5, Docs. 156, 170).    The Seventh Circuit specifically addressed this issue, explaining:

    In any case, "[n]o person who stands convicted of an offense under this section may challenge the validity of any prior conviction alleged . . . which occurred more than five years before the date of the information . . . ."    21 U.S.C. § 851(e).    Taken together, § 851(b) and (e) allow a prior conviction that might be used to enhance a sentence to be challenged during the sentencing phase; a challenge cannot be brought until the guilt phase is complete, and no challenge is possible if the conviction is over five years old.    **Vinyard's prior conviction was in 1984, and thus it is covered by § 851(e): he was no longer entitled to attack its validity at the time of his sentencing hearing.**

    The court's duty to inquire under § 851(b) arises only after conviction or the acceptance of the guilty plea.    **A failure to conduct that inquiry cannot retroactively draw into question the antecedent guilty plea.**    At most, an error here might call the sentence into question.    *Cf.* Fed. R. Crim. P. 11(b) (listing the items about which a defendant must be admonished before a guilty plea may be

accepted, but not mentioning § 851 or prior convictions used for enhancement).
The district court's belief here that it had not complied properly with § 851(b)
cannot be grounds for applying Rule 35(a) to the guilty plea. If a violation of §
851(b) caused the court to misstate the maximum possible penalty, then there
would be a violation of Rule 11(b)(1)(H), which would be subject to correction if
the defendant wished to set aside his guilty plea and if he could convince the
district court to allow him to withdraw the plea under Rule 11(d).

The district court's alleged §851(b) error would not warrant relief from the
sentence, either. If any potential collateral attack would be barred by § 851(e),
the district court is under no to duty to inquire under § 851(b), *United States v.
Arrango-Montoya*, 61 F.3d 1331, 1339 (7th Cir. 1995) (*per curiam*), even though
it is probably good practice to do so, *id.* Given that there is no duty, there is no
error justifying the radical action of setting aside the guilty plea without any
request from the defendant.

539 F.3d at 593-94 (emphasis added). The Court of Appeals further stated that "it is not at all

clear on this record that there was any error at all (or at least anything that should not be

characterized as harmless)" because "Vinyard unequivocally affirmed the fact of his earlier

convictions during the sentencing proceeding." *Id.* at 594.

With respect to Judge Gilbert's concerns regarding the sentencing hearing, and more

specifically, the relevant conduct determined in the PSR,[2] the Seventh Circuit also found no

issue:

We also see no error in the district court's decision to adopt the findings in
the PSR. Although it required a brief recess so that he could consult with his
lawyer, **Vinyard eventually expressly stated that he had no objection to the**

---

[2] According to the Orders entered by him, Judge Gilbert believed that petitioner was "troubled" by the
relevant conduct calculation, and wanted to challenge some portions of it. (No. 4:05-cr-40065-WDS,
Doc. 170 at 3). Further, Judge Gilbert stated that even though petitioner was told that there was no
realistic possibility that the relevant conduct figure would be less than 500 grams, petitioner had the right
to contest the figure. *Id.* Judge Gilbert described the atmosphere in the courtroom at the sentencing
proceedings as "confusing, hasty, and, at times, chaotic," and even though the Court recessed to allow
petitioner to consult with his attorney, in retrospect, he believed it should have "continued the sentencing
hearing and allowed him to pursue his objections." *Id.* at 4.

Consistent with the Seventh Circuit, the undersigned's review of the proceedings reveal that,
although petitioner did seem to question the relevant conduct at one point, Judge Gilbert, and petitioner's
attorney gave him every opportunity to contest the conduct, file objections, or even file a motion to
withdraw his plea if he desired. Petitioner ultimately made the decision not to file objections, and it
cannot be said that petitioner was not "allowed" to pursue that avenue.

**PSR. Any error relating to the quantity of drugs would, on this record, have been harmless**. The only issue was whether the amount of methamphetamine involved in the conspiracy was greater than 500 grams. If so, the mandatory minimum sentence of 240 months would be triggered. **Vinyard had already stipulated to at least this amount, and so even if there were some problem with the PSR, there was sufficient evidence from other sources that would have supported the same mandatory minimum sentence-which is, after all, what Vinyard received in the end.**

*Id*. (emphasis added).

After the mandate reflecting the above decision and directing the undersigned to enter judgment on the sentence imposed by Judge Gilbert issued, Vinyard filed a motion to withdraw his guilty plea with the district court, and this Court held a hearing on the motion. The Court denied Vinyard's motion to withdraw his plea on the basis that the mandate of the Court of Appeals specifically directed the Court to enter judgment on the sentence previously imposed by Judge Gilbert, and did not allow for a new sentencing proceeding, or for reopening the previous proceedings (No. 4:05-cr-40065-WDS-5, Doc. 202).

On June 8, 2009, judgment was entered on the sentence previously imposed: 240 months imprisonment, ten years supervised release, a fine of $250, and a special assessment of $100. Petitioner did not file a direct appeal.

In the case at bar, petitioner has filed a motion pursuant to 28 U.S.C. § 2255, alleging that each of his appointed attorneys[3] was constitutionally ineffective in a number of ways. Petitioner alleges that his first attorney was ineffective on the following bases: (1) counsel never

---

[3] Petitioner was represented by two appointed attorneys at different times during his proceedings: he was represented by Susan Gentle through his initial sentencing, and then, after she was terminated by Judge Gilbert, was represented by Gene Gross during the mandamus proceedings and during his subsequent criminal proceedings.

Petitioner claims that Judge Gilbert's termination of petitioner's first attorney was "indicative of his assessment of her performance." (Doc. 10). Judge Gilbert, did not, however, comment on, or provide reasons for his termination of petitioner's first attorney, and petitioner is merely speculating as to his reason for doing so.

advised petitioner that he had a right to require the government to prove, beyond a reasonable doubt, each and every factor that could affect the severity of punishment; (2) counsel failed to expressly advise petitioner that he had a right to attack his sentence on direct appeal or collateral attack; (3) counsel misled petitioner as to the potential punishment he was facing; (4) counsel coerced petitioner into pleading guilty by erroneously stating that his case was hopeless, there was overwhelming evidence against him, and that he had to plead guilty to keep the government from seizing his home; (5) counsel's advice that stipulating to his involvement with more than 500 grams of methamphetamine was of no significance and that he could later object, resulted in an involuntary plea; and (6) counsel failed to file sentencing objections.

Petitioner alleges that his second attorney was ineffective because he (1) failed to file sentencing objections, (2) erroneously advised petitioner to file a collateral attack instead of filing a direct appeal, and failed to advance meritorious arguments on appeal; and (3) spent an inadequate amount of time consulting with petitioner regarding his decision whether or not to file a direct appeal.

Petitioner also raises a number of other claims: (1) he was denied due process and jury trial rights when his sentence was enhanced beyond the statutory maximum based on facts not found by a jury beyond a reasonable doubt, and specifically, the amount of drugs related to petitioner was never proven; (2) the prior offense used to enhance defendant's sentence was so old that the "safety valve" should have applied; and (3) the district court lacked jurisdiction to enhance defendant's sentence based on the prior offense because the government did not comply with the procedural requirements of 21 U.S.C. § 851(a), and petitioner never received the notice.

Petitioner also moves to withdraw his plea based on his assertion that the plea was obtained through threats and misadvice.    Petitioner further asserts that Rule 11 was violated in that he was not advised of the elements of the offense to which he pleaded guilty, that off the record threats and promises were made without the requisite disclosure to the Court; that he executed a stipulation of facts that he could not adequately review, and that he was not afforded the right to object to the contents of the PSR.    Finally, petitioner alludes to a claim of prosecutorial misconduct.

## LEGAL STANDARD

Relief under § 2255 is "reserved for extraordinary situations."    *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993)). Section 2255 requires the court to vacate, set aside, or correct the sentence of a prisoner in custody if the Court finds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."    28 U.S.C. § 2255(a).

A § 2255 motion "can *not* raise (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal."    *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994).    Section

2255 is "neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Thus:

> [a]n issue not raised on direct appeal is barred from collateral review absent a showing of both good *cause* from the failure to raise the claims on direct appeal and actual *prejudice* from the failure to raise those claims, or if a refusal to consider the issue would lead to a fundamental miscarriage of justice.

*Prewitt*, 83 F.3d at 816.

Ineffective assistance of counsel claims, however, have been identified as generally raised and considered on collateral review, where a complete record can be developed. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Harris*, 394 F.3d 543, 557-58 (7th Cir. 2005). Defendant bears a heavy burden to establish ineffective assistance of counsel. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). Ineffective assistance of counsel claims are evaluated under the two-prong *Strickland* test. *McDowell v. Kingston*, 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 688, 690, 694 (1984)). To succeed, petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced the defendant in such a way that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 695. The Court is not required to analyze both the performance and prejudice prong, because the failure to satisfy either prong is fatal to the claim. *Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993); *United States v. Slaughter*, 900 F.2d 1119, 1124 (7th Cir. 1990).

Further, to show that counsel's performance fell below an objective standard of reasonableness, a petitioner must identify "acts or omissions of counsel that could not be the result of professional judgment. The question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (internal quotation omitted).

In the plea context, to establish prejudice, a petitioner "must demonstrate through objective evidence that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 351(quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A mere allegation that the petitioner would have insisted on going to trial is inadequate. *Id.*

## ANALYSIS

### I. INEFFECTIVE ASSISTANCE – FIRST ATTORNEY[4]

#### A. FAILURE TO ADVISE PETITIONER THAT EVERY FACTOR AFFECTING SEVERITY OF PUNISHMENT MUST BE PROVEN BEYOND A REASONABLE DOUBT

Petitioner claims that counsel never advised him that he had the right to require the government to prove, beyond a reasonable doubt, each and every factor that would affect the severity of his punishment. Based upon a review of all of the arguments asserted by petitioner, presumably, the "factor" he is referring to is the quantity of drugs involved in the offense. The Court makes this presumption based on the fact that petitioner repeatedly argues that he did not realize the consequences of stipulating to his involvement with 500 grams of methamphetamine, that he wanted to object to the relevant conduct calculations, and based on his attempts to assert a claim pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), regarding the particular amount

---

[4] The Court notes that petitioner filed a complaint with the Attorney Registration and Disciplinary commission of the Supreme Court of Illinois in an effort to secure Susan Gentle's response to the claims raised in his petition. He filed her response to the complaint in this case, but asserts that she provided the Commission with false information. The Court has reviewed petitioner's submission of her response, and his reply thereto (Doc. 15 and attached exhibits).

of drugs attributable to him.

Upon review of the transcript of petitioner's change of plea hearing, it is clear that petitioner affirmed to Judge Gilbert, under oath and subject to penalties of perjury, that he had been provided a copy of the superseding indictment, generally discussed that indictment with his attorney, stated that he was fully satisfied with the his attorney, and had signed a stipulation of facts admitting to his role in the conspiracy involving over 500 grams of methamphetamine. (Plea Transcript at 4, 12). Further, Judge Gilbert reviewed the charges alleged in the superseding indictment, which included the fact that the amount of methamphetamine involved in the conspiracy exceeded 500 grams, and petitioner affirmed that he understood the nature of the charges against him. (Plea Transcript at 4-5). The government provided the following factual basis with respect to petitioner:[5]

> The evidence would show that beginning sometime in 2001, Mr. Vinyard became involved with some of the same co-defendants in the production of methamphetamine. Like Mr. Toler, Mr. Vinyard would participate in the methamphetamine cooks by providing precursor elements such as pseudoephedrine pills and anhydrous ammonia.
> Mr. Vinyard would pool those resources with other members of the conspiracy, which include Mr. Toler, Ryburn O'Bannon, Robbie Shannon Hyatt, among others. He would pool these resources with the individuals, and at the end of the methamphetamine cooks, he would receive finished methamphetamine product in exchange for his participation.
> And finally, the evidence would show that Mr. Vinyard's conduct occurred primarily in Saline County, which is within the Southern District of Illinois.

(Plea Transcript at 11-12). With respect to the government's factual basis, and the stipulation petitioner signed, the following exchange occurred:

THE COURT: Mr. Vinyard, is the factual basis as to you correct?

---

[5]The Court notes that petitioner's change of plea hearing was held at the same time as one of his co-defendants, Larry Toler. Throughout this Order, the Court has removed Defendant Toler's comments and responses for the purpose of focusing on the colloquy between the Court and petitioner.

DEFENDANT VINYARD: Yes, sir.

THE COURT: Is this your signature to page 2 of the stipulation of facts?

DEFENDANT VINYARD: Yes.

THE COURT: Did you read and go over this document with your attorney before you signed it?

DEFENDANT VINYARD: Yes, I did.

(Plea Transcript at 12).

Judge Gilbert also advised petitioner that he was innocent until proven guilty, and must "**be proven guilty beyond a reasonable doubt**," had a right to a jury trial, to confront accusers, and to bring witnesses to testify on his own behalf. (Plea Transcript at 6) (emphasis added). Petitioner affirmed to Judge Gilbert that he understood each of these rights, and that he understood that by pleading guilty, he was giving up his right to a trial by jury and would be sentenced as if he was found guilty by a jury. (Plea Transcript at 6-7).

The Court is not at liberty to ignore what transpired at the change of plea proceedings:

> When a district court conducts a Rule 11 colloquy, it is not putting on a show for the defendant, the public, or anybody else. The purpose of a Rule 11 colloquy is to expose coercion or mistake, and the district judge must be able to rely on the defendant's sworn testimony at the hearing. Because the district court takes a criminal defendant's rights at a change-of-plea hearing very seriously, it is reasonable to expect, and demand, that the criminal defendant do so as well. For that reason, a defendant is normally bound by the representations he makes to a court during the colloquy.

*Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (internal quotation marks and citations omitted). "We treat sworn statements made in open court most seriously and demand that parties tell the truth." *Koons*, 639 F.3d at 352. "[A] motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the

11

defendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). In other words, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen of Maryland*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity").

In light of the plea proceedings, petitioner would have had to have committed perjury if the court is to believe his current assertions. He told the Court that he reviewed the stipulation of facts, that he was satisfied with his attorney, that he was pleading guilty to an offense involving 500 grams or more of methamphetamine, that he understood that he was innocent until proven guilty beyond a reasonable doubt, and that he was facing a twenty (20) year minimum sentence. The Court is not required to try to determine whether the petitioner's current story is believable over his former story, with his "attorney blamed for the difference." *See Hugi v. United States*, 164 F.3d 378, 381 (7th Cir. 1999). "A guilty plea is not a road-show tryout before the 'real' contest occurs in the § 2255 proceedings." *Id.* at 382.

Petitioner is bound by the representations he made at his change of plea hearing and has not provided a compelling explanation for his current contradiction. He has also failed to demonstrate through objective evidence that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. In light of the exchange that took place between petitioner and Judge Gilbert at petitioner's change of plea hearing, it is evident that whether or not his attorney adequately advised him of his rights, Judge Gilbert did so, and petitioner, therefore, cannot show that he was prejudiced by counsel's alleged failure to advise

him that the government was required to prove him guilty beyond a reasonable doubt. Accordingly, petitioner's claim on this basis is **DENIED**.

Furthermore, to the extent that petitioner attempts to assert that he received ineffective assistance because the government was never required to prove his involvement with a specific amount of drugs beyond a reasonable doubt, the premise of petitioner's argument is mistaken. The government asserts that petitioner's sentence was driven by the operation of a statutory minimum, and not the guidelines, and therefore, *Blakely* does not apply to petitioner's conduct because he was subject to a twenty (20) year mandatory minimum sentence. Further, petitioner admitted at his change of plea hearing and by signing a stipulation of facts, that his conduct involved 500 grams of methamphetamine. Petitioner further affirmed that his conduct not only exceeded 500 grams of methamphetamine, but also was in excess of 15 kilograms of methamphetamine, at his sentencing hearing (Sentencing Transcript at 28).

Petitioner argues that he was denied due process and other "jury trial rights" when his sentence was enhanced "beyond the statutory maximum" based on facts not found by a jury beyond a reasonable doubt, which made his sentence inconsistent with *Blakely* and *Apprendi*. The Seventh Circuit has explained, however, that drug type and quantity are not elements of the offense, and has "held repeatedly, drug type and quantity are sentencing factors that must be found by the jury, insofar as they establish the maximum possible sentence." *United States v. Washington*, 558 F.3d 716, 719 (7th Cir. 2009). The Supreme Court has "concluded that there is no requirement for the jury to find beyond a reasonable doubt the facts that trigger a statutory minimum sentence." *Id.* (citing *Harris v. United States*, 536 U.S. 545, 557 (2002)). In other words, "*Apprendi* does not apply to facts establishing a statutory minimum." *Id.* at 720.

"*Apprendi* requires only that drug type and quantity be set forth in the indictment and proven beyond a reasonable doubt *if* the sentence imposed exceeds a default statutory maximum." *Benham v. United States*, 27 F.App'x 696, 698 (7th Cir. 2001). "*Apprendi* does not affect application of the relevant-conduct rules under the Sentencing Guidelines to sentences that fall within a statutory cap." *Talbott v. Indiana*, 226 F.3d 866, 869 (7th Cir. 2000).

Petitioner was sentenced to the mandatory *minimum* of 240 months. The drug quantity did not establish a statutory maximum, nor did his sentence exceed a statutory maximum, and, therefore, there was no requirement that a jury determine, beyond a reasonable doubt, the quantity of drugs attributable to him. Moreover, because drug quantity need not be proven by the government beyond a reasonable doubt, petitioner's attorney's performance did not fall below an objective standard of reasonableness by failing to tell petitioner that the government was so required. Accordingly, petitioner's claim, on this basis, is **DENIED**.

### B. FAILURE TO ADVISE PETITIONER HE HAD THE RIGHT TO ATTACK HIS SENTENCE ON DIRECT APPEAL OR COLLATERAL ATTACK

Petitioner baldly claims that his attorney failed to advise him of his right to attack his sentence on direct appeal or by collateral attack. The government asserts that petitioner's claim fails because, regardless of whether his attorney so informed him of these rights, the Court did so.

Upon review of the transcript of the sentencing proceeding, it is clear that Judge Gilbert advised the petitioner that he had the right to appeal, that the appeal must be filed within ten (10) days after entry of judgment, that an attorney would be appointed for him if he could not afford one, that a transcript of the record for appeal would be prepared at the government's expense if he could not afford it, and, if he so requested, the Clerk of the Court would file a notice of appeal

on his behalf.    (Sentencing Transcript at 32).    Petitioner affirmed to Judge Gilbert, under oath, that he understood his appeal rights.

Accordingly, even if petitioner's counsel did not advise him of his right to appeal, the Court did so, and, therefore, petitioner cannot show he was prejudiced by counsel's performance. Accordingly, this claim is **DENIED**.    Any claim that petitioner was not made aware of the fact that he could file a collateral proceeding to dispute his sentence is belied by the fact that the current case is just that, and therefore, he cannot show any prejudice by a lack of advice by counsel, and this claim is likewise, **DENIED**.

### C.  Misled Petitioner Regarding Potential Punishment

Petitioner claims, throughout his pleadings, that he was misled regarding the punishment he was facing, and he was unaware that he was locking himself into a twenty (20) year sentence by pleading guilty.    Yet again, the record of the change of plea proceedings belies petitioner's claim.    At the change of plea hearing, Judge Gilbert advised petitioner of the following:

> Because an 851 enhancement has been filed, **the statutory penalties that can be imposed upon a plea or a finding of guilty is a term of imprisonment of not less than 20 years to life**, a fine of up to $8,000,000, and a term of supervised release of at least ten years.    And the effect of supervised release means that once you are released from prison, if you violate your terms of supervised release, you can be revoked and sent back to prison.    Do each of you understand that?

(Plea Transcript at 5).    Petitioner affirmed to Judge Gilbert that he understood this information. Judge Gilbert followed up by asking, "[a]ny questions with regards to the possible penalties that could be imposed upon a plea or a finding of guilty," to which petitioner replied, "[n]o, sir." (Plea Transcript at 6).

The record shows that petitioner was, at the very least, informed by Judge Gilbert, prior to pleading guilty, that he was facing a minimum of twenty (20) years of imprisonment, and that

petitioner affirmed his understanding of the sentence he faced. Petitioner is bound by the representations he made at his change of plea hearing and has not provided a compelling explanation for his current contradiction. He has also failed to demonstrate through objective evidence that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. Accordingly, even if petitioner's counsel did not adequately advise him regarding the potential punishment he was facing, the Court did so, and therefore, petitioner suffered no prejudice. Petitioner's claim on this basis is **DENIED**.

### D. COERCED PETITIONER INTO PLEADING GUILTY

Petitioner claims that counsel told him that his case was hopeless and that the government's case against him was overwhelming, and that he should plead guilty and sign the stipulation of facts to avoid seizure of his home. Further, petitioner asserts, in his affidavit, that, at a meeting with his attorney and government investigative agents, the agents told him that if he did not cooperate and plead guilty, they would institute forfeiture proceedings against his home. Petitioner claims his decision to plead guilty was based on his desire to avoid the eviction of his family from, and eventual loss of, his home. He also alleges that he has now learned that his home was never really in jeopardy, that the government was just threatening him to coerce his guilty plea, and that had his counsel properly advised him of the scope and consequences of the forfeiture laws, he could have made an informed decision with respect to his plea.

The government asserts that petitioner affirmed, under oath, at his change of plea hearing, that no threats or promises had been made in an effort to coerce him to plead guilty (Plea Transcript at 8). Based upon this affirmation by petitioner at his change of plea hearing, the

government asserts, there is no question that petitioner made a knowing and voluntary decision to plead guilty.

"A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.   A conviction based upon such a plea is open to collateral attack." *Machibroda v. United States*, 368 U.S. 487, 493 (1962).   The Supreme Court has declined "to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."   *Brady v. United States*, 397 U.S. 742, 751 (1970).   Furthermore, the Supreme Court has explained:

> Plea bargaining flows from "the mutuality of advantage" to defendants and prosecutors, each with his own reasons for wanting to avoid trial. *Brady v. United States*, supra, 397 U.S., at 752, 90 S.Ct., at 1471. Defendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation. 397 U.S., at 758, 90 S.Ct., at 1474. Indeed, acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process. By hypothesis, the plea may have been induced by promises of a recommendation of a lenient sentence or a reduction of charges, and thus by fear of the possibility of a greater penalty upon conviction after a trial. See ABA Project on Standards for Criminal Justice, Pleas of Guilty § 3.1 (App. Draft 1968); *364 Note, Plea Bargaining and the Transformation of the Criminal Process, 90 Harv.L.Rev. 564 (1977). Cf. *Brady v. United States*, supra, at 751, 90 S.Ct., at 1470; *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162.
> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"-and permissible-"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin v. Stynchcombe*, supra, 412 U.S., at 31, 93 S.Ct., at 1985. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

*Bordenkircher v. Hayes*, 434 U.S. 357, 363-64 (1978).   The Supreme Court in *Bordenkircher* held "that the course of conduct engaged by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment."   *Id.* at 365.

In this case, petitioner claims that his plea was coerced by the government's "threats" to seize his home.   According to the record, petitioner's counsel believed that the government could and would institute forfeiture proceedings against his home, should he decide to proceed to trial, and there is nothing in the record to indicate that the government could not legitimately do so.   In fact, the record reveals that, at the time of his arrest, a clandestine methamphetamine lab was located on his property, the same property that the government threatened to seize.

Although petitioner consistently refers to the possibility of forfeiture as a "threat" that induced his plea, the decision of whether or not to proceed with seizure of the petitioner's home was within the prosecutor's discretion.   The Constitution does not "forbid[] every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights."   *Chaffin v. Stynchcombe*, 412 U.S. 17, 30 (1973). Furthermore, "[t]here are many reasons why a defendant may choose to plead guilty.   They do not, simply by being denominated 'fears,' necessitate the conclusion that the plea was not voluntary."   *Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959).   "Petitioner must show that he was subjected to threats or promises of illegitimate action."   *Id.* at 799.   Petitioner has not shown that he was subject to threats or promises of illegitimate action in light of the fact that, at the time of his arrest, a clandestine methamphetamine lab was located on his property.

Although the petitioner faced difficult alternatives, he made the decision to go forward with pleading guilty in light of those alternatives, and in no way has he shown that his plea was coerced.

Furthermore, with respect to this claim, the record of the change of plea hearing provides that petitioner decided to plead guilty voluntarily, and absent any threats or promises. Specifically, the following exchange took place between Judge Gilbert and petitioner:

> THE COURT: Mr. Vinyard, I understand that you're entering what's called an open plea.    You're pleading guilty not pursuant to any plea agreement; is that correct?
>
> DEFENDANT VINYARD: Yes, sir.
>
> THE COURT: Have any threats or promises been made to you in an effort to induce you to plead guilty?
>
> DEFENDANT VINYARD: No, sir.
>
> THE COURT: Is your intent to plead guilty the result of your own free and voluntary act?
>
> DEFENDNANT VINYARD: Yes, sir.

(Plea Transcript at 8).    Petitioner clearly told Judge Gilbert that his plea was voluntary, and that no threats or promises had been made to him in an effort to induce him to plead guilty. Accordingly, for this Court to provide relief on the basis that petitioner felt threatened or coerced at the time of his plea, it would have to accept the fact that petitioner committed perjury at his change of plea hearing.    Petitioner is bound by the representations he made at his change of plea hearing and has not provided a compelling explanation for his current contradiction.    He has also failed to demonstrate through objective evidence that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.    Furthermore, as

described *supra*, a prosecutor's legitimate threat of forfeiture proceedings does not make

petitioner's plea involuntary.[6]    Accordingly, petitioner's claim on this basis must be **DENIED**.

### E.  ADVISED PETITIONER THAT DRUG QUANTITY STIPULATION WAS INSIGNIFICANT &
### THEN FAILED TO FILE SENTENCING OBJECTIONS

Petitioner asserts that counsel erroneously advised him that the stipulation to conspiracy

involving 500 grams of methamphetamine was insignificant, and that he could object to relevant

conduct at sentencing. Petitioner claims he was unaware of the "danger" of signing an inaccurate

stipulation of facts, and his decision to plead guilty was the result of this erroneous advice.    In

his affidavit, petitioner claims he had less than two minutes to review the stipulation of facts, and

that he told his attorney that the 500 grams of methamphetamine included in the stipulations was

incorrect.    He claims she then told him the number was of no significance and that he could

object at sentencing.

Also included in petitioner's pleadings, are his assertions that he used methamphetamine

for a period of time in the past, occasionally made some of the meth he used, but did not sell

methamphetamine to anyone, and it was a "stretch" to say he was involved in a conspiracy, but if

he was, his part was "at most, much less than minimal."    (Doc. 10 at 2).    Further, he claims

that he had previously admitted that his involvement included no more than twenty-eight (28)

grams, that he informed his attorney of this fact, and that she told him the stipulation didn't

matter and he could object at sentencing.    (Doc. 12 at 5).    He claims that had counsel advised

---

[6] Petitioner also makes much ado about the fact that there was no written plea agreement detailing these arrangements and that they were simply off the record threats which lead to petitioner being coerced into pleading guilty.    This is not the case, however.    The record reveals that the Court was aware, at the change of plea hearing, that the government agreed not to pursue forfeiture proceedings against petitioner's home.    Ms. Gentle, petitioner's counsel at the time, in fact, took extra care to make this agreement a part of the record at the change of plea hearing, presumably to protect petitioner's interests in light of the fact that there was no plea agreement.    (Plea Transcript at 14-15).

him that, by pleading guilty and signing the stipulation of facts, he was locking himself into a twenty (20) year sentence, he would have done things differently, and that he didn't think, that, as a result of his plea, he would be sentenced to twenty (20) years of imprisonment, but instead, would be sentenced based on his "actual" guilt.   (Doc. 12 at 8).

To establish ineffective assistance with respect to relevant conduct, petitioner "would have to demonstrate that [his] lawyer's explanation about relevant conduct was deficient, and also a reasonable probability that [he] would have insisted on going to trial absent [his] attorney's misstep."   *United States v. Wilson*, 480 F.App'x 420, 422 (7th Cir. 2012).

In a similar case, the Seventh Circuit came to the conclusion that a defendant who admitted, under oath, to his involvement with a particular quantity of drugs that he subsequently disputed, only had himself, and not his attorney to blame for the outcome of his case.   *United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010).   The Court explained:

> Parker was not deprived of the right to speak truthfully when the sentencing judge asked him how he pleaded to distributing between 50 and 150 kilograms of cocaine.   Nor was he deprived of the right to speak truthfully when the judge asked whether he made the drug-quantity admission voluntarily.   Parker committed perjury when he admitted to more than 50 kilograms if we are to believe his argument in this court that he was responsible only for 15 kilograms.   Had Parker told the sentencing judge what he now claims is the truth and admitted to 15 kilograms yet still tried to plead guilty to the 50 to 150 kilograms as required by the plea agreement, the judge could not have accepted the plea, *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), in which case had he persisted in pleading guilty without the benefit of the plea agreement, as he argues he would have, then he might have received one of the lesser sentences we described above.

*Parker*, 609 F.3d at 895.   The Court also explained:

> As Parker was not denied the ability to respond truthfully, under oath, to the judge's questions, and thus not denied the ability to receive the sentence he claims would have been better, we cannot say that counsel's deficient performance rendered this case's "result . . . unreliable or the proceeding fundamentally unfair."   *Fretwell*, 506 U.S. at 372, 113 S.Ct. 838 (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

Moreover, perjury is illegal, *see* 18 U.S.C. § 1621, and a defendant cannot establish prejudice "by illegal means. Can anyone doubt what practices and problems would be spawned by such a rule and what volumes of litigation it would generate?" *Nix*, 475 U.S. at 176, 106 S.Ct. 988. Indeed, the illegality of Parker's acts renders this one of those "situations in which it would be unjust to characterize the likelihood of a different outcome as legitimate 'prejudice.'" *Williams v. Taylor*, 529 U.S. 362, 391-92, 120 S.Ct. 1495, 146 L.Ed.2d 359 (2000); *see also Goodman v. Bertrand*, 467 F.3d 1022, 1027-28 (7th Cir. 2006) (quoting *Washington v. Smith*, 219 F.3d 620, 632-33 (7th Cir. 2000)) (finding that the prejudice standard "looks beyond outcome determination to the fundamental fairness of the proceeding . . . in cases where the defendant challenges his conviction based upon unusual circumstances, that, as a matter of law, do not typically inform the court's inquiry.").

Thus Parker's prejudice arguments fail, because the Supreme Court's Sixth Amendment jurisprudence establishes that a defendant's illegal activity intervenes to sever any causal connection between counsel's poor performance and the disputed result. *Nix*, 475 U.S. at 176, 106 S.Ct. 988.

*Parker*, 609 F.3d at 895-96.

In light of the plea proceedings, petitioner again would have had to have committed perjury if the court is to believe his current assertions. He told the Court that he reviewed the stipulation of facts, that he was satisfied with his attorney, that he understood he was pleading guilty to an offense involving 500 grams or more of methamphetamine, that he was facing a twenty (20) year minimum sentence, and that he understood all of this. Petitioner also affirmed to Judge Gilbert that he reviewed and signed a stipulation of facts in which he admitted that the conspiracy with which he was involved 500 grams or more of methamphetamine.

As noted in the *Parker* case above, petitioner cannot establish prejudice by illegal means. Petitioner was not deprived of the right to speak truthfully when Judge Gilbert asked him how he pleaded to the charge of conspiracy to manufacture, distribute, and possess with intent to distribute 500 grams or more of methamphetamine, nor was he deprived of the right to speak truthfully when the judge asked him whether he signed the drug quantity stipulation voluntarily.

He committed perjury at his change of plea hearing if the Court is to believe petitioner's current argument that his involvement was with a significantly lower drug quantity.

Even if, prior to his change of plea, his attorney did not adequately consult[7] with petitioner regarding the significance of the drug quantity, the Court thoroughly reviewed the elements of the offense, the rights he was giving up, and the twenty (20) year minimum sentence he faced as a result of his plea, and therefore, petitioner cannot show he was prejudiced by his attorney's performance.

Further, the illegal act of perjury, committed by petitioner, if the Court is to believe his current assertions, prevents him from obtaining relief now, pursuant to an ineffective assistance claim. Like Parker, petitioner was not deprived the right to speak truthfully when asked if he understood the nature of the charges against him and that he voluntarily signed a stipulation of facts and pleaded guilty to a charge regarding his involvement with over 500 grams of methamphetamine. Furthermore, petitioner has provided no compelling reason for his current contradictions, nor has he demonstrated through objective evidence that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Accordingly, his claim, on this basis, is **DENIED**.

With respect to sentencing objections, petitioner claims that he asked his attorney, prior to sentencing, whether it was too late to file objections, to which she responded that it was useless to object because the government's witnesses would lie, the investigators would lie, and that the government would coach their witnesses to lie about his involvement to ensure he

---

[7] The Court also notes that petitioner has not stated a claim for relief via his assertions that he only had a few minutes to review the stipulation of facts, or that his attorney did not spend much time with him in general. *See United States v. Coleman*, 231 F.App'x 512, 515 (7th Cir. 2007) (There is no requirement that an attorney meet with a client for a particular amount of time before a plea hearing.).

received a twenty (20) year sentence.    (Doc. 1-2 at 5).    Petitioner further claims that he wanted

to object to each and every item of relevant conduct in the PSR, and specifically, to the instance

which attached 36,000 grams to his relevant conduct.    Petitioner asserts that the information

regarding this instance came from an unreliable witness and describes events that could not

possibly have occurred.    Petitioner claims that his attorney would not investigate this potential

objection, and had this one occurrence been removed from the PSR, his relevant conduct would

have fallen below the 500 gram threshold that led to his twenty (20) year sentence.

 Finally, petitioner asserts that, during sentencing, Judge Gilbert allowed a short recess to

allow petitioner to speak with his attorney about any potential objections he wished to make.

During the recess, petitioner claims that the government and his attorney spoke for a short time,

after which, his attorney informed him: "[t]hey're not going to allow you to object to your

relevant conduct.    If you do, they will initiate forfeiture proceedings on your home, they'll take

away your three points for acceptance of responsibility, and they will charge you with

obstruction of justice."    (Doc. 1-2 at 6).    Petitioner then asked what the penalty was for

obstruction of justice, to which his attorney responded that it was ten (10) years.    Petitioner

asserts that, based on this, he felt intimidated, confused, and pressured to make a decision, that

he had "little or no choice," so he "reluctantly agreed" to withdraw his objections and proceed

with the sentencing.    (Doc. 1-2 at 6-7).

 A review of the transcript of the sentencing hearing reveals that, after petitioner's first

indication that he was concerned about his relevant conduct, Judge Gilbert took a recess to allow

petitioner to consider the course of action he wished to take.    Petitioner's counsel clearly stated,

on the record, that she would file any objections he wished, or file a motion to withdraw his plea,

but that petitioner himself ultimately decided against taking either of these courses of action.

The following exchange occurred at the sentencing hearing:

> THE COURT: In other words, you're objecting to the relevant conduct?

> MS. GENTLE: Your Honor, for the record, I believe if we are going to object to the relevant conduct, then we have to object to the relevant conduct across the board, which means, basically, as I indicated to Jerry, if he wanted to make a motion to withdraw the guilty plea, I would be happy to do that. But as I indicated early on, it's a guilty plea or it's a trial. Those are the two choices that you have when the federal government picks you up.
> I didn't force anybody to plead guilty. Now it appears that from the discussion, that my client wants to object, I believe, to the relevant conduct across the board. I believe that puts us in a position where we're disputing guilt across the board, which then puts us in the position where we don't -- we did have some agreements with the government when we anticipated a plea agreement that, I believe, that Mr. Cutchin was willing to abide by.
> Even though the proffer didn't go through, there were allegations that and testimony from my client himself that meth was being produced at the home, not in the residence itself, but at-- on the property and at sheds, and, I believe, a garage attached to the home.

> THE COURT: That's where they found the gun?

> MS. GENTLE: Correct. Part of the agreement, original anticipated plea agreement, was that the government would not proceed against the house, also. And Mr. Cutchin, I believe, also agreed to the additional one point for cooperation.
> Now, Your Honor, just so the record's, just so everything's clear, I believe if we -- if my client wants to withdraw the guilty plea, as I told him, Your Honor, I would be happy to advise the Court that he wants to withdraw the guilty plea. That he disagrees now with everything that's in it, but I just want to make it clear where we are with that.

> THE COURT: Mr. Vinyard, do you want time to talk to your attorney?

> THE DEFENDANT: I don't want to disagree to all the relevant conduct. It's not all untrue. A lot of it is, but some of it is true. And I think that there's just that one item there could possibly make a difference in my sentencing. Is that not true?

> THE COURT: Well, then, it looks like he is objecting. You know, I cannot go forward with this sentencing with you standing there and telling me that you are

now objecting to part of the relevant conduct.    Is it a part that's going to make a difference in the mandatory minimum number?

MR. CUTCHIN: Are you asking me, Judge?

THE COURT: Yes.

MR. CUTCHIN:    Judge, if you will recall from your reading the presentence investigation report, there's a number of incidents that were not counted to avoid the possibility of double counting.

THE COURT: Double counting.

MR. CUTCHIN: I don't think that there's any realistic possibility, and I think Ms. Gentle would agree, that the relevant conduct would be below 500 grams.    Any amount over 500 grams - -

THE COURT: Is going to kick in the mandatory 20-year minimum.

MR. CUTCHIN: Makes a 20-year mandatory minimum.    The guideline range and relevant conduct is of little relevance in this case.    What Mr. Vinyard does is up to him.    I don't think it's accurate for him to believe that this story about the two tanks alone is going to change the outcome in this case.

MS. GENTLE: That's correct, Your Honor.

THE DEFENDANT: Very well.

THE COURT:    Well, I know you're not happy, Mr. Vinyard, but I want you to be making an informed decision.    Do you want to object to the relevant conduct? The 20-year mandatory minimum kicks in - -

THE DEFENDANT:    I understand.

THE COURT:    - - if it's over 500 grams or more.    If you're telling this Court that you were not involved in 500 grams or more of a mixture and substance containing methamphetamine, then I will continue this and set this matter for a hearing to give you an opportunity to bring in witnesses; the government will have an opportunity to bring in witnesses, and we'll have a hearing, and I'll make a determination.

If you stand there knowing the facts of this case as you do because it's your case, if you are saying that, "Well, I might not have been involved in 36.35 kilograms, but I was involved with more than 500 kilograms [sic], that's not going to make a difference in your statutory mandatory minimum or guideline range, but that's your decision.    And if you want time to consult with your

26

attorney, I'll give you time to consult.    Do you want time to consult with your attorney?    Why don't we take five minutes.    Okay?

THE DEFENDANT: Okay.

(Sentencing Transcript at 23-27).    The Court then recessed, after which, the following exchange occurred:

THE COURT: Okay.    Ms. Gentle.

MS. GENTLE: Well, Your Honor, my client and I have talked, Your Honor.    I don't believe at this time he wants to contest that portion of the relevant conduct and - -

THE COURT: Okay, Mr. Vinyard, will you come back up here.

THE DEFENDANT: Okay.

THE COURT: You can come back up, too, Mrs, Vinyard, if you wish. Okay.    Have you had a chance to meet with your attorney, and go over, again, the facts of your case and the [sic] talk about the relevant conduct in your case?

THE DEFENDANT: Yes, I have.

THE COURT: Are you going to contest that the relevant conduct would be over 500 grams of a mixture or substance containing methamphetamine?

THE DEFENDANT: No, sir.

(Sentencing Transcript at 27-28).    After this exchange, but before imposing sentence, the Court again asked petitioner whether he was contesting whether his relevant conduct was over or under fifteen (15) kilograms, to which he replied that he was not.    Additionally, the Court gave petitioner another chance to speak before imposing sentence, which petitioner declined.

As reflected in the record, counsel advised petitioner, in light of the stipulation that he had already signed, the abundance of evidence that would be elicited from government witnesses who would testify against him, and the benefits he was expecting from the government, that she

believed his interests were best served by not filing sentencing objections.    The record shows that the choice was petitioner's, and counsel told him she would file anything he wished, including sentencing objections or a motion to withdraw his plea, but he declined.    The record also shows that the Court clearly explained the circumstances to the petitioner, allowed him a number of opportunities to take whatever course of conduct he desired, and that he made his decision.    He, and no one else, made the decision to go forward with sentencing in light of the circumstances he faced.    While clearly a difficult choice, it was petitioner's choice to make and he made it.    Petitioner must have, yet again, perjured himself when he told the Court he did *not* wish to object to the relevant conduct, if the Court is to believe his current statements that he *did* want to object.

Counsel cannot be deemed ineffective as a result of a fate chosen by petitioner being fully aware of the consequences.    Furthermore, there is nothing in the record to indicate that the government could not legitimately pursue forfeiture of his home, argue against his three (3) point reduction for acceptance of responsibility, or file obstruction of justice charges against him.    It appears that petitioner significantly benefitted from counsel's efforts in that his home actually was not seized, he received a three (3) point reduction for acceptance of responsibility, and obstruction of justice charges were not filed against him.

Petitioner is bound by the representations he made at his plea and sentencing hearings and has not provided a compelling explanation for his current contradiction.    He has also failed to demonstrate through objective evidence that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial.    In light of this record, petitioner

cannot show that counsel's assistance fell below an objective standard of reasonableness, or that he was prejudiced as a result.    Accordingly, petitioner's claim on this basis is **DENIED**.

## II.    INEFFECTIVE ASSISTANCE – SECOND ATTORNEY

### A.  FAILURE TO FILE SENTENCING OBJECTIONS

Petitioner asserts that his second attorney failed to file sentencing objections.    Petitioner does not elaborate at all on this claim, or on the objections that he believes counsel should or could have filed.    As noted by the Court in its Order denying the petitioner's motion to withdraw his guilty plea, the matter was not remanded to the undersigned for re-sentencing, and instead, the Court was clearly directed by the mandate of the Seventh Circuit to simply enter judgment on the sentence previously imposed by Judge Gilbert.    (*See* No. 4:05-CR-40065-WDS-5, Doc. 202 at 3).    In other words, the Court was not free to conduct full sentencing proceedings or even entertain objections.

The Court notes that petitioner's counsel did make an offer of proof, stating petitioner's reasons for attempting, at that time, to withdraw his plea, and the sentencing objections he would have put forth, had the Court been able to consider such matters.    However, given the procedural posture of the case, counsel's hands were tied with respect to filing sentencing objections.    Accordingly, counsel did not have the opportunity to file sentencing objections, and, therefore, his performance cannot be said to have fallen below an objective standard of reasonableness, and cannot be the basis of an ineffective assistance claim.    Petitioner's claim on this basis is **DENIED**.

### B. Erroneously Advised Petitioner to File a Collateral Attack Instead of a Direct Appeal & Failed to Advance Meritorious Arguments on Appeal

After the undersigned entered judgment on Judge Gilbert's previously imposed sentence, petitioner allegedly informed his attorney that he wanted to get back into court quickly. Petitioner claims that counsel advised him that the record was not sufficiently developed to pursue a direct appeal, and that his best chance for success was via a § 2255 petition. Petitioner states, "[t]aking this advice I decided to file the 2255," but he claims that he has since "learned" that he had several meritorious claims that should have been brought on appeal, but he was, by this time, barred from filing a direct appeal. Petitioner claims that the decision not to file a direct appeal constitutes ineffective assistance of counsel, and the decision speaks for itself in a case involving such an unusual situation.

The government asserts that petitioner has not identified the issues counsel should have pursued on direct appeal, and has, therefore, failed to demonstrate prejudice. Petitioner asserts, however, in his later pleadings, that the following issues should have been raised on direct appeal: his plea was coerced by the government, the district court was not informed of the verbal plea agreement between the government and the defendant, and Judge Gilbert removed petitioner's first counsel on his own accord.

With his reply brief, petitioner attaches a letter he had received from his attorney, which states that "[t]he decision to pursue issues of ineffective assistance or proceed with direct appeal were discussed last year. I believe you have made the right decision . . . ." (Doc. 4-1 at 2). Vinyard also filed a letter he wrote to Mr. Gross, requesting an explanation for why he advised the petitioner to forego a direct appeal, and Mr. Gross' response to that letter (Doc. 13 at 9-12). Mr. Gross responded, "I fully discussed your options with you at the time your sentence was

imposed. You are a very intelligent person and I proceeded as directed. It was your informed

decision not to file a direct appeal based upon an assessment of your options." (Doc. 13 at 12).

Vinyard admits that he "ultimately made the 'informed' decision" to forgo his appeal, however,

he claims that his decision was based solely on his attorney's erroneous advice. (Doc. 13 at 5).

A lawyer who fails to file an appeal after a defendant so requests, has provided

ineffective assistance, regardless of the defendant's probability of success on appeal.

*Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir. 1994). "'Request' is an important

ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that

avenue." *Id.* "[A] defendant who explicitly tells his attorney *not* to file an appeal plainly

cannot later complain that, by following his instructions, his counsel performed deficiently."

*Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Further, counsel is not "ineffective per se for

failure to appeal an appealable judgment." *Corral v. United States*, 498 F.3d 470, 473 (7th Cir.

2007) (quotation omitted).

Petitioner has clearly stated that he made the decision, after consulting with counsel, to

forgo the filing of a direct appeal and to instead, pursue a collateral attack. This decision was

undoubtedly, a strategic one, and one which counsel and petitioner agreed would be the best

course. *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation

of law and facts relevant to plausible options are virtually unchallengeable."). Counsel did not

fail to file a direct appeal after he was requested to do so, and petitioner affirmatively agreed

with counsel's advice to forgo an appeal. Additionally, the claims petitioner asserts should

have been raised on appeal, do not appear to be claims that could not be raised on collateral

attack, and he has, in fact, raised each of the claims in this proceeding. It was not objectively

unreasonable, therefore, for counsel to advise petitioner that further factual development beyond the criminal record, and only possible on collateral review, would be helpful to his claims.

Accordingly, petitioner cannot show that counsel assistance was objectively unreasonable or that he was prejudiced as a result.    Petitioner's claim, on this basis, is **DENIED**.

### C.  INADEQUATE CONSULTATION REGARDING WHETHER TO FILE A DIRECT APPEAL

"[C]onsultation requires advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Burnett v. United States*, 472 F.App'x 409, 414 (7th Cir. 2012) (quotation omitted).    Even in cases where the defendant has not clearly instructed counsel to file an appeal or not, "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."    *Roe*, 528 U.S. at 478.

The letter from petitioner's counsel, and petitioner's own assertions show that a consultation occurred in which the two discussed the advantages and disadvantages of filing an appeal or seeking collateral relief, and that counsel ultimately followed the instructions given by petitioner.    In this scenario, counsel's assistance did not fall below an objective standard of reasonableness, and petitioner's claim for relief on this basis is **DENIED**.

### III.  GENERAL CLAIMS

### A.  DUE PROCESS AND JURY TRIAL RIGHTS DENIED WHEN SENTENCE ENHANCED BASED ON DRUG QUANTITY

Petitioner claims that based on *Apprendi*, his sentence is per se unconstitutional because his sentence was increased by judicially determined facts.    Specifically, petitioner asserts that

the government has never proven the particular amount of drugs that he possessed, and that no jury determined the amount of drugs attributable to him.

Petitioner further claims that the only offense level supported by his guilty plea is a Level 12, which would yield a sentencing range of 10-16 months, and that the Court unconstitutionally made factual determinations not supported by a verdict or plea, based upon a preponderance of the evidence standard.

As noted *supra*, petitioner admitted at his change of plea hearing and by signing a stipulation of facts, that his conduct involved 500 grams of methamphetamine. Petitioner further affirmed that his conduct not only exceeded 500 grams of methamphetamine, but also was in excess of 15 kilograms of methamphetamine, at his sentencing hearing (Sentencing Transcript at 28). Furthermore, the Court has already determined that this claim is meritless, and that the government was not required to prove drug quantity beyond a reasonable doubt, and the Court will not repeat the discussion here (*See* Section I.A. at 12-14 *supra*). Accordingly, this claim is **DENIED**.

### B. "SAFETY VALVE" SHOULD HAVE APPLIED TO PRIOR OFFENSE SO THAT IT COULD NOT BE USED TO ENHANCE SENTENCE

Petitioner claims that he should not have been subject to the mandatory minimum sentence based on his prior drug offense because it was a twenty-two (22) year old state conviction that should have been expunged from the record. Petitioner asserts that it should not have been relied on to determine criminal history points, or to trigger a mandatory minimum. He claims that because the conviction was twenty-two (22) years old, he met the requirements of the "safety valve."

Petitioner apparently misunderstands the requirements of 18 U.S.C. § 3553(f).   Under

§ 3553(f), the sentencing judge may impose a sentence less than the statutory minimum in

certain circumstances.

> To be eligible for these benefits, a defendant must prove by a preponderance of
> the evidence, *United States v. Ramirez,* 94 F.3d 1095, 1101 (7th Cir.1996), that he
> has met the following five criteria:
> (1) the defendant does not have more than 1 criminal history point, as determined
> under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of violence or possess a
> firearm or other dangerous weapon (or induce another participant to do so) in
> connection with the offense;
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in
> the offense, as determined under the sentencing guidelines and was not engaged
> in a continuing criminal enterprise, as defined in section 408 of the Controlled
> Substances Act; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully
> provided to the Government all information and evidence the defendant has
> concerning the offense or offenses that were part of the same course of conduct or
> of a common scheme or plan, but the fact that the defendant has no relevant or
> useful other information to provide or that the Government is already aware of the
> information shall not preclude a determination by the court that the defendant has
> complied with this requirement.
> 18 U.S.C. § 3553(f).

*United States v. Brack*, 188 F.3d 748, 762 (7th Cir. 1999).

Petitioner fails to show that he was eligible for the safety valve, and the record reveals

otherwise.   Plaintiff flunks the first condition of eligibility because his prior felony conviction,

resulted in the application of three (3) criminal history points.   He admitted his guilt of that

offense at his Sentencing Hearing.   Further, the age of the prior conviction is irrelevant.   The

record also reveals that the petitioner possessed a firearm in connection with the offense (a

loaded firearm was found with the clandestine lab at petitioner's residence on the date of his

arrest (Doc. 3 at 4)), and that he did not provide truthful information to the government.   As a

result, for a number of reasons, he was not eligible for application of the safety valve to his sentence, and petitioner's claim, on this basis, is **DENIED**.

### C. DISTRICT COURT LACKED JURISDICTION TO ENHANCE SENTENCE BASED ON PRIOR OFFENSE BECAUSE PETITIONER DID NOT RECEIVE NOTICE

Petitioner asserts that the government did not comply with the procedural requirements of 21 U.S.C. § 851(a), and, therefore, the Court did not have jurisdiction to enhance his Sentence based on his prior conviction. He claims that he has never received the § 851 notice, and has, therefore, been denied due process to properly challenge it.

The government asserts that this claim is without merit, and that the § 851 notice filed in petitioner's criminal case was explicit, detailed, and in full compliance with the statute. In his reply, petitioner claims that because the government, in the notice, indicated it was relying on the enhancement provisions, § 841(b)(1)(A), (b)(1)(B), and (b)(1)(C), the government did not unambiguously signal to petitioner that it sought to enhance his sentence only under § 841(b)(1)(A).

Under § 851(a)(1), the government is required to file an information with the court, and serve a copy of it on the defendant, or defendant's counsel, stating in writing the previous convictions to be relied upon, and must do so before trial or before entry of a plea of guilty. 21 U.S.C. § 851(a)(1). Petitioner affirmed his knowledge of the § 851 notice filed and its effect on his sentence, and his understanding of this, at his change of plea hearing, where Judge Gilbert noted its existence and the mandatory minimum sentence of twenty (20) years that applied as a result.

Upon review of the § 851 notice filed by the government in petitioner's criminal case (Doc. 3-1), the Court is satisfied that the government fully complied with the statute, that the notice was not deficient, and petitioner's claim on this basis is **DENIED**.

### D.  MOTION TO WITHDRAW PLEA/RULE 11 VIOLATION

Petitioner claims that he can show fair and just reasons for withdrawing his plea in that his plea was obtained through the use of threats and misadvice.    The bases of this claim are merely reiterations of a number of petitioner's previous assertions.

The Supreme Court has "strictly limited the circumstances under which a guilty plea may be attacked on collateral review."    *Bousley v. United States*, 523 U.S. 614, 621 (1998).    "'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."    *Id.*    (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)).    "And even the voluntariness and intelligence of a plea can be attacked on collateral review only if first challenged on direct review."    *Id.*    Accordingly, petitioner has procedurally defaulted this claim by failing to raise it on direct review, and therefore, can only raise the claim now by demonstrating either "cause" and actual "prejudice," or that he is "actually innocent."    *See id.* at 622.    Petitioner blames counsel for failing to file an appeal, but since petitioner admits to deciding to forgo his appeal, counsel's actions do not amount to ineffective assistance.    Petitioner has not, therefore, demonstrated cause to excuse his failure to challenge his guilty plea on direct appeal.

Furthermore, in reviewing Rule 11 proceedings, the court should look at substance over ceremony and reality over ritual, and "[w]e need only satisfy ourselves, by considering the total circumstances surrounding the plea, that the defendant was informed of his rights and understood

the consequences of his plea." *United States v. LeDonne*, 21 F.3d 1418, 1423 (7th Cir. 1994). In light of the record and the Court's rulings *supra*, petitioner has stated no meritorious grounds for relief with respect to this claim, and it is **DENIED**.

### E. PROSECUTORIAL MISCONDUCT

Petitioner asserts that the Assistant United States Attorney, Jim Cutchin, through Special Agent Greg Chance, relayed threats to defendant concerning potential forfeiture of his home to coerce petitioner into pleading guilty. Petitioner also asserts that, if afforded an evidentiary hearing, Cutchin would testify that several of his witnesses lied under oath and gave false information concerning the petitioner, and that he failed to adequately investigate the allegations made by his witnesses against the petitioner. (Doc. 14 at 9).

As stated *supra*, the record does not reveal any threats of illegitimate conduct or other actions which would constitute prosecutorial misconduct. Accordingly, petitioner's claim on this basis is **DENIED**.

## IV. <u>Hearing</u>

Petitioner has requested a hearing. Because summary dismissal of a § 2255 motion is appropriate when the motion and the files and records of the case conclusively demonstrate that the petitioner is not entitled to relief, this Court **FINDS** that it is unnecessary to hold a hearing, and petitioner's request is **DENIED**. 28 U.S.C. § 2255(b) (2010), *see also, Politte v. United States*, 852 F.2d 924, 931 (7th Cir. 1988).

## V. Certificate of Appealability

Should Petitioner desire to appeal this Court's ruling dismissing his motion under 28 U.S.C. § 2255, he must first secure a certificate of appealability, either from this Court or from the Court of Appeals. *See* FED. R. APP. P. 22(b); 28 U.S.C. § 2253(c)(1). Pursuant to 28 U.S.C. § 2253, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but petitioner must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id*. at 338 (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the district court denies the request, a petitioner may request that a circuit judge issue the certificate of appealability. FED. R. APP. P. 22(b)(1)-(3).

For the reasons detailed above, the Court has determined that petitioner has not stated any grounds for relief under § 2255. Furthermore, the Court finds no basis for a determination that its decision is debatable or incorrect. Thus, Petitioner has not made "a substantial showing of the denial of a constitutional right."

**IT IS THEREFORE ORDERED** that a certificate of appealability shall **NOT** be issued.

## CONCLUSION

Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED** on all grounds raise, and the petition is **DISMISSED WITH PREJUDICE.**

A certificate of appealability shall **NOT** be issued.

The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE: November 22, 2013**

                                        **/s/   WILLIAM D. STIEHL          **
                                               **DISTRICT JUDGE**